# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10026

United States Court of Appeals
Fifth Circuit

**FILED**
June 25, 2018

Lyle W. Cayce
Clerk

CENTURY SURETY COMPANY,

> Plaintiff - Appellee

v.

SCOTT M. SEIDEL, Trustee of the Pastazios Pizza, Incorporated Creditor Trust,

> Defendant - Appellant

JANE DOE,

> Intervenor Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.[*]

E. GRADY JOLLY, Circuit Judge:

Ajredin Deari, owner of Pastazios Pizza, Inc., lured eighteen-year-old Jane Doe to his restaurant. Doe alleged that Deari and his restaurant—yes, the insured restaurant itself—plied Doe with alcohol despite her protests. Once Doe was unconscious, Deari then drove her to a nearby hotel and sexually assaulted her. This insurance-coverage case asks whether Century Surety Company breached a contractual duty to defend and indemnify Deari's restaurant in the underlying state tort lawsuit brought by Jane Doe.

---

[*] Chief Judge Stewart concurs in the judgment.

No. 17-10026

The district court granted summary judgment in favor of Century, applying the insurance policy's liquor-liability and intentional-harm exclusions. Doe and the restaurant's trustee now appeal. But because Doe and the trustee concede that all of Doe's injuries arose out of or resulted from the restaurant's criminal act of giving alcohol to a minor, we hold that the policy's criminal-act exclusion applies and bars all coverage claims. Thus, we affirm.

I.

A.

Jane Doe's complaint in the underlying state-court litigation, which concluded with a twenty-million dollar judgment in her favor, alleged the following facts: In April 2011, Doe was an eighteen-year-old high school graduate. She met with a man named Dritan Kreka at a restaurant called Back 9 Sports Bar & Grill ("Back 9"), to interview for a position at Kreka's own restaurant and to discuss "other possible networking opportunities."

At Back 9, Kreka introduced Doe to Ajredin Deari, who owned a nearby restaurant called Pastazios Pizza, Inc. ("Pastazios"). Deari asked Doe how old she was, and she informed him that she was eighteen years old. Deari subsequently tried to order Doe an alcoholic beverage, but Back 9's server "refused to bring the beverage because [Doe] was underage." So Deari suggested that the three of them should move the conversation to Pastazios. Thus, the three of them drove from Back 9 to Pastazios.

Along the way, Deari stopped at a liquor store to purchase a bottle of 80-proof liquor, Crown Royal Black. He took it with him to Pastazios. Neither he nor Pastazios was licensed to serve hard liquor.

Upon arriving at Pastazios, "Deari proceeded to walk inside of Pastazios, grab a round of beers, and placed one of the beers in front of [Doe] and encouraged her to drink it." "Deari then went back inside Pastazios and came out with a round of shots of Crown Royal Black that had been placed into 2-

2

No. 17-10026

ounce plastic salad dressing cups from Pastazios and encouraged [Doe] to drink it."

Doe's complaint then alleges that, over the next few hours, Deari and "Pastazios" "continued to encourage and provide [Doe] with more and more alcoholic products from within and owned by Pastazios, despite [Doe] telling them she did not want anymore." Following two beers and three 2-ounce shots of Crown Royal Black, "things started getting fuzzy" for Doe. "Pastazios then proceeded to provide [Doe] with yet another 2-ounce shot of 80 proof hard liquor." In total, Deari and "Pastazios" gave Doe "5-6 shots of Crown Royal Black and 3 beers." Although Doe expressed "grave concerns about her growing level of intoxication and her inability to function normally, . . . [Doe] was effectively detained as a direct result of being provided intoxicating products by Pastazios."

The complaint alleges that "Pastazios" then "allowed" Deari and Kreka to load the drunken Doe into a car on Pastazios' property. Doe lost consciousness. A urine test would later reveal that Doe had been given a date-rape drug called Rohypnol. Doe regained consciousness sometime later in a hotel room, only to find that Deari was sexually assaulting her. During that encounter, Deari infected Doe with herpes. Deari later pleaded no-contest to the crime of aggravated assault.

## B.

In 2013, Doe sued Kreka, Deari, and Pastazios in Texas state court. Against Kreka and Deari, Doe alleged a variety of intentional torts. Against Pastazios, Doe alleged negligence, gross negligence, Dram Shop liability, false imprisonment, and premises liability. Against all three defendants, Doe requested punitive damages.

Century Surety Company ("Century"), the insurer of Pastazios, initially provided Pastazios a defense under a Commercial General Liability Policy

3

No. 17-10026

("Policy"). A few months later, however, Century withdrew its defense and advised Pastazios that it had no duty to defend under the Policy based on the factual allegations in Doe's complaint.

Century then filed this action in federal court, seeking a declaratory judgment that it had no duty under the Policy to defend or indemnify Pastazios.

In 2014, Pastazios filed for bankruptcy because it could no longer afford to defend against Doe's lawsuit. The bankruptcy court confirmed a plan of reorganization, creating the Pastazios Pizza Inc. Creditor Trust ("Trust").[1] Scott Seidel was appointed trustee ("Trustee"), and the Trust was assigned all of Pastazios' causes of action, including those arising under the Policy.

In 2015, back in state court, Doe won a bench-trial verdict against Pastazios and Deari. The state-court judge entered "Findings of Fact and Conclusions of Law," which were drafted by Doe's attorneys with no objection from Pastazios. The judgment held Pastazios and Deari jointly and severally liable for over twenty million dollars. With respect to Pastazios, the state court found the restaurant liable for gross negligence, Dram Shop liability, and "negligent" false imprisonment, and imposed punitive damages. Despite Century's repeated offers to fund an appeal, no appeal was filed.

C.

After obtaining her twenty-million-dollar state-court judgment, Doe intervened in this declaratory-judgment action, as a judgment creditor, to enforce Pastazios' rights under the Policy by asserting several counterclaims against Century. Relevant here, Doe and the Trustee asserted that Century breached its duties under the Policy to defend and to indemnify Pastazios with respect to the underlying suit brought by Doe.

---

[1] Doe is the primary creditor of Pastazios and the primary beneficiary of the Trust.

No. 17-10026

All parties moved for summary judgment.  The district court granted Century's motion, holding that Century had neither a duty to defend nor a duty to indemnify Pastazios.  With respect to the duty to defend, the district court based its denial of coverage on a finding that Doe's claim against Pastazios was not covered because of two exclusions: the liquor-liability and intentional-act exclusions.  Reasoning that the duty to defend is "broader" than the duty to indemnify, the district court then held that Century thus had no duty to indemnify.  Doe and the Trustee ("Appellants") appealed.

## II.

We begin our consideration of this appeal by setting out the basic legal principles that broadly guide us.  "We review grants and denials of summary judgment de novo.  Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Lyda Swinerton Builders, Inc. v. Okla. Surety Co.*, 877 F.3d 600, 609 (5th Cir. 2017) (internal citation omitted) (quoting Fed. R. Civ. P. 56(a)).

"We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision."  *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).  Both sides raised the Policy's criminal-act exclusion in the proceedings before the district court and argued the exclusion on appeal.  The Policy's criminal-act exclusion, if it applies, is thus an appropriate ground for affirmance.

The interpretation of an insurance contract is a question of law reviewed de novo.  *Principal Health Care of La., Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994).  In this diversity case, Texas's rules of contract interpretation control our reading of the Policy.  *See Lyda Swinerton Builders*, 877 F.3d at 609.  "Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts generally.  The terms

No. 17-10026

used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense.  The contract is to be considered as a whole, with each part given effect and meaning." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996) (citations omitted).

### III.

At issue in this appeal are Century's duties to defend and indemnify Pastazios in the underlying suit brought by Doe.  At the outset, although the parties raised several coverage issues, including the threshold issues of whether there was coverage under the Policy in the first place or whether Deari is an "insured" under the Policy, it is unnecessary for us to address those issues because we conclude that the criminal-act exclusion, addressed by all parties both in the proceedings below and in this appeal, applies and bars all coverage. We hold that Century had no duty to defend because Doe's complaint demonstrates that all of Doe's damages arose out of Pastazios' criminal act of giving alcohol to a minor.  We also hold that Century has no duty to indemnify because it was established at trial that all of Doe's damages arose out of or resulted from Pastazios' criminal act of giving alcohol to a minor.

### A.

We turn first to whether Century breached a duty to defend Pastazios. In determining an insurer's duty to defend, Texas courts follow the "eight-corners" rule, which "looks only to the four corners of the most recent complaint in the underlying action as well as the four corners of the insurance policy." *City of College Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 336 (5th Cir. 2013). In this case, the most recent complaint in the underlying action is Doe's fourth amended petition. "If the underlying complaint pleads facts sufficient to create the *potential* of covered liability, the insurer has a duty to defend the *entire*

case, even if the allegations are demonstrably false, fraudulent, or groundless, and even if some of the injuries alleged are not covered or fall within the scope of an exclusion." *Id.* (footnote omitted). "However, if the insurer can show that *all* of the alleged liability falls . . . within the scope of an exclusion, the insurer has no duty to defend." *Id.*

The Policy excludes coverage for bodily injury "arising out of or resulting from a criminal act committed by any insured." In Texas, "[w]hen an exclusion precludes coverage for injuries 'arising out of' described conduct, the exclusion is given a broad, general and comprehensive interpretation. A claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999); *see Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003); *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004).

In Texas, it is a Class A misdemeanor to give alcohol to a minor in the absence of her parents: "[A] person commits an offense if he purchases an alcoholic beverage for or gives or with criminal negligence makes available an alcoholic beverage to a minor." Tex. Alco. Bev. Code Ann. § 106.06(a); *see id.* § 106.06(b), (c). And a misdemeanor act is a criminal act. *See* § 7A Couch on Ins. § 103:40 ("Within the context of liability insurance, the word 'crime' includes violations of penal statutes, including misdemeanors[.]").

Here, Doe's complaint states that Doe was a minor: "[Doe] was underage."[2] The complaint also states that "Pastazios," the restaurant itself, gave more than one alcoholic beverage to Doe: "Throughout the course of approximately . . . two hours, Pastazios . . . continued to encourage and provide

---

[2] Doe's complaint also states that "[Doe] was 18 years old." As Century points out, under the Texas Alcoholic Beverage Code, "minor" means "a person under 21 years of age." Tex. Alco. Bev. Code Ann. § 106.01.

No. 17-10026

Plaintiff with more and more alcoholic products from within and owned by Pastazios, despite [Doe] telling them she did not want anymore." Additionally: "Pastazios then proceeded to provide [Doe] with yet another 2-ounce shot of 80 proof hard liquor." And: "Despite her desire to go home safely, [Doe] was effectively detained as a direct result of being provided intoxicating products by Pastazios." Thus, Doe's bodily injury arose out of or resulted from a criminal act committed by "Pastazios," the insured. In fact, Doe's complaint is unequivocal that all of her injuries arose out of Pastazios' provision of alcohol: "[Doe's] intoxication—as a result of the provision and/or distribution of alcoholic products by Pastazios was a proximate cause of [Doe's] damages and bodily injuries complained of herein. In fact, all of [Doe's] damages and bodily injuries arise out of the products provided and/or distributed to her by Pastazios." Indeed, Doe's complaint leaves no room for doubt: "All of [Doe's] damages and bodily injuries complained of herein arise out of and/or result from [Doe's] intoxication at the hands of Pastazios—without which, [Doe] never would have been injured. . . . This is so even though the physical act of being raped occurred half a mile away from the premises."

Accordingly, coverage is precluded because all of Doe's injuries arose out of or resulted from Pastazios' criminal act.[3] Before concluding our discussion, however, we acknowledge that Appellants offer a number of arguments to the

---

[3] Courts have often applied a criminal-act exclusion to bar liability coverage for damages arising out of providing alcohol to a minor. *See, e.g.*, *Allstate Ins. Co. v. Greer*, 921 N.E.2d 793, 796 (Ill. App. 2009); *Cont'l Ins. Co. v. Kovach*, No. 05-1152, 2007 WL 2343771, at *9–12 (W.D. Pa. Aug. 14, 2007); *Auto Club Ins. Co. v. Petz*, No. 242933, 2003 WL 22975501, at *1–2 (Mich. Ct. App. Dec. 18, 2003); *Davis v. Malcolm*, No. 212689, 2000 WL 33534068, at *1 (Mich. Ct. App. Feb. 11, 2000); *cf. Coregis Ins. Co. v. Sch. Bd. of Allen Par.*, No. 07-30844, 2008 WL 2325632, at *3 (5th Cir. June 6, 2008); *Allstate Ins. Co. v. Blount*, 491 F.3d 903 (8th Cir. 2007). There is also a trend among courts to find that there is no threshold coverage because criminally providing alcohol to a minor is not an "accident" or "occurrence" that, as in this case, is required to trigger liability coverage. *See, e.g.*, *Schinner v. Gundrum*, 833 N.W.2d 685, 699–700 (Wis. 2013); *Sheely v. Sheely*, 2012 WL 34451, at *8–9 (Ohio. App. 2012) (listing cases).

contrary. None of them change the result, but we will briefly address the issues that have been raised.[4]

First, Appellants argue that the criminal-act exclusion should not apply because Doe's complaint did not specifically plead that Pastazios' provision of alcohol was criminal. We cannot agree. Doe specifically pleaded that she was eighteen years old and "underage," thus necessarily implying that she could not be served alcohol under the laws of Texas because of her age. And in any event, Appellants have cited no case law stating that, to trigger a criminal act exclusion, the plaintiff in the underlying suit must, in addition to describing actions that necessarily imply a crime, also specifically label those actions as criminal. Such a rule is incongruous with the plain language of the Policy and would create an artifice in criminal-act exclusions. *Cf. James v. La. Laborers Health & Welfare Fund*, 29 F.3d 1029, 1034 (5th Cir. 1994) (per curiam) (noting the "illogic" of such a rule in the context of an ERISA exclusion for injuries sustained during the course or commission of a felony).

Second, Appellants argue that Pastazios' criminal act does not bar coverage because, they insist, the Policy specifically provides coverage for violations of alcohol statutes. They point to a subsection of the Policy's liquor-liability provision, and assert that it provides coverage for bodily injury resulting from the "[v]iolation of any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages." The problem for Appellants, however, is that this policy provision is not an endorsement but instead is a policy exclusion. Specifically, Appellants quote the liquor-liability exclusion.[5] And the language of an exclusion simply does not create coverage.

---

[4] Appellants did not argue that Pastazios committed no criminal act, at least with respect to the duty to defend, and have thus forfeited any argument in that respect. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 372 (5th Cir. 1998). They did, however, preserve that argument with respect to the duty to indemnify, which we discuss below.

[5] The provision cited by Appellants states:

No. 17-10026

*See United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 451–52 (5th Cir. 2007) ("An exclusion . . . cannot affirmatively grant coverage that would not otherwise exist under the policy[.]").  We acknowledge that Appellants have argued at length that the Policy's "products-completed operations hazard" ("PCOH") exception to the liquor-liability exclusion applies.[6]  But even if PCOH bars the liquor-liability exclusion, PCOH is not an affirmative grant of coverage.  Further, PCOH has no bearing on the criminal-act exclusion, which is an independent coverage exclusion.  Thus, even if PCOH applies, it does not affirmatively grant coverage for the violation of criminal statutes relating to alcoholic beverages when such violations also trigger the criminal-act exclusion.  *See id.*; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994); *Paradigm Ins. Co. v. Tex. Richmond Corp.*, 942 S.W.2d 645, 652 (Tex. App. 1997), *writ denied* (Nov. 20, 1997) (observing that a PCOH exception to a liquor-liability exclusion does not create coverage).

Third, Appellants argue that applying the criminal-act exclusion would render the Policy's liquor-liability endorsement meaningless.  But this argument fails for the same reasons outlined in the immediately preceding paragraph.  Appellants' citation to *Big Town Nursing Homes, Inc. v. Reserve Insurance Co.*, 492 F.2d 523, 525–26 (5th Cir. 1974), which held that an express endorsement may trump a criminal-act exclusion, does not save their case.  As

---

**Liquor Liability Exclusion**
    c. Liquor Liability
        "Liquor Liability" is defined as "Bodily injury" . . . for which any insured
        may be held liable by reason of: . . .
            *c. Violation of any statute, ordinance or regulation relating to the*
            *sale, gift, distribution or use of alcoholic beverages.*
    We have neither a duty to defend nor a duty to indemnify any insured for any
    claim or suit, and this insurance does not apply if any proximate or
    contributing cause of an "occurrence" arises out of "liquor liability."

[6] The PCOH exception states that the liquor-liability exclusion "does not apply to claims within the 'products-completed operations hazard.'"

we have noted, here, there is no express endorsement for the violation of criminal statutes; the Policy provision cited by Appellants constitutes an exclusion, not a coverage endorsement. Still further, Appellants' objection fails because the liquor-liability endorsement is not rendered meaningless. As Century points out, the endorsement covers violations of statutes and ordinances that are not criminal in nature—i.e., statutory violations that do not also trigger the Policy's criminal-act exclusion. Indeed, the state court's Findings of Fact and Conclusions of Law, drafted by Doe's counsel without objection by Pastazios, identifies one such non-criminal statutory violation: "Pastazios violated Section 2.02(b) of the Texas Alcoholic Beverage Code," which is the provision of Texas's Dram Shop statute imposing civil liability for damages resulting from serving alcohol to obviously intoxicated patrons. *See Reeder v. Daniel*, 61 S.W.3d 359, 362–63 (Tex. 2001) (observing that, while Section 106.06 of the Texas Alcoholic Beverage Code, the prohibition against serving alcohol to minors, is a criminal provision, Section 2.02 of the Code, the civil cause-of-action provision, establishes only civil liability); *Smith v. Merritt*, 940 S.W.2d 602, 607–08 (Tex. 1997) (same). So Appellants' objection plainly fails.

In sum, we hold that the criminal-act exclusion precludes any duty to defend. Doe alleged that the restaurant itself committed the criminal act of giving alcohol to a minor and that all of her injuries arose out of or resulted from that criminal act. Accordingly, Century had no duty to defend the underlying suit brought by Doe.

B.

1.

We turn next to Century's duty to indemnify, which is governed not by Doe's factual allegations but by the facts established in the underlying bench trial. *See Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pa.*, 334 S.W.3d 217, 219 (Tex. 2011); *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009). If, however, the trial court did not resolve factual issues related to coverage, the parties may offer additional evidence to determine whether the insurer has a duty to indemnify. *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 431 (5th Cir. 2016) (citing *D.R. Horton*, 300 S.W.3d at 744); *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2001). Otherwise, courts could not resolve the duty to indemnify when the underlying trial leaves unresolved an issue irrelevant to liability but essential to coverage. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008). Thus, in this case, we look primarily to the state court's official Findings of Fact and Conclusions of Law, which, we note again, were drafted by Doe's counsel with no objection from Pastazios. And to the extent there is any doubt about factual issues related to coverage, we look to the trial record, which is part of the record on appeal and to which both parties cite in support of their respective positions.

As we noted previously, the provision of alcohol to a minor is a criminal act. Here, Appellants concede in their briefs that it was established during trial that Pastazios gave alcohol to a minor: "[A]s the state court's Findings of Fact and Conclusions of Law . . . demonstrate, Doe proved that . . . she sustained bodily injury from [Pastazios'] handling and distribution of alcoholic products to an intoxicated minor." And, consistent with Doe's pleadings, the state court's Findings of Fact and Conclusions of Law states that Pastazios' provision of alcohol to Doe was both a proximate and but-for cause of all of Doe's damages.[7] Thus, it is undisputed that all of Doe's bodily injury arose out

---

[7] Therefore, the Trustee's suggestion that an apportionment trial should be held to determine what portion of Doe's recovery is attributable to the criminal provision of alcohol

No. 17-10026

of or resulted from Pastazios' criminal act of providing alcohol to a minor. These conceded facts trigger the criminal-act exclusion, to which we have earlier referred. Accordingly, Century has no duty to indemnify.

Although our analysis could properly end here, we address Appellants' remaining counterargument.

2.

Appellants argue that the underlying trial did not establish that Pastazios committed a criminal act. Specifically, they argue that the mens rea component of the criminal statute was not established at trial. The criminal statute prohibits three distinct acts: (1) "purchas[ing]" an alcohol beverage for a minor; (2) "giv[ing]" an alcohol beverage to a minor; or (3) "with criminal negligence mak[ing] available" an alcoholic beverage to a minor. Tex. Alco. Bev. Code Ann. § 106.06(a). Here, it is, again, undisputed that Pastazios "provided" and "distribut[ed]" alcohol to Doe, a minor. Citing no authority, however, Appellants urge us to find that Pastazios did not "give" alcohol to Doe but merely made alcohol "available" to Doe. It is clear from the face of the criminal statute that the crime of making alcohol "available" to a minor has a "with criminal negligence" element. *See id.* And because the state court's Findings of Fact and Conclusions of Law do not specifically state that Pastazios acted "with criminal negligence," Appellants urge us to hold that the state court did not find that Pastazios committed a criminal act and, consequently, that the criminal-act exclusion cannot excuse Century's duty to indemnify. But even assuming Appellants' unsupported distinction between "providing" alcohol to a minor and "giving" alcohol to a minor in the context of the facts of this case, Appellants' argument fails for two independent reasons.

---

is declined, because the state court found that all of Doe's damages arose out of Pastazios' criminal provision of alcohol to a minor.

13

No. 17-10026

First, we agree with Century that the state court's imposition of punitive damages against Pastazios necessarily satisfies the criminal-negligence element. In Texas, punitive damages may be awarded "only if" the plaintiff proves at trial that her harm resulted from (1) fraud, (2) malice, or (3) gross negligence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a). Here, there was no fraud; and Appellants eschew arguing that the punitive damages were imposed due to Pastazios' malice, as that would trigger the Policy's exclusion for injury "expected or intended" by Pastazios. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (defining "malice" as "a specific intent by the defendant to cause substantial injury or harm to the claimant"). Thus, Appellants rely on the theory that the punitive damages were imposed solely due to Pastazios' gross negligence. But they fare no better under that theory. In Texas, "gross negligence" is equivalent to "criminal recklessness," which, in turn, necessarily includes but is a more culpable mental state than "criminal negligence." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 20 n.10 (Tex. 1994); *Williams v. State*, 235 S.W.3d 742, 751 n.16 (Tex. Crim. App. 2007); *see also Braun v. Clean Harbors Envtl. Servs., Inc.*, No. 1:14-CV-524, 2016 WL 7551118, at *4 n.2 (E.D. Tex. Jan. 25, 2016); *compare* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (defining gross negligence), *with* Tex. Penal Code Ann. § 6.03(d) (defining criminal negligence). Thus, by imposing punitive damages on Pastazios, the state court necessarily found that Pastazios acted with criminal negligence. Accordingly, Appellants' counterargument fails.

Second, Appellants' counterargument fails because Deari's culpable mental state is imputed to Pastazios under the vice-principal doctrine. In Texas, "[w]hen actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself." *Bennett v. Reynolds*, 315 S.W.3d 867, 883 (Tex. 2010) (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1998)). "[A] vice-principal includes four classes of human

14

agents: (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business." *Id.* at 884. A vice-principal is established if the corporation's agent "used corporate authority over corporate employees, on corporate land, to [commit a tort] using corporate equipment." *Id.* at 885.

Here, it was established in the underlying trial that Deari was the vice-principal of Pastazios. For example, it was agreed by all parties that Deari was the manager, president, and sole owner of Pastazios, who "had the general authority to do whatever he wanted at Pastazios." Consistent with Doe's pleadings, at the state bench trial it was also uncontested that Deari walked right into Pastazios, which he owned and managed, grabbed several beers, and served them to Doe on his own property, all in furtherance of his plan to assault Doe. These facts demonstrate that Deari was the vice-principal of Pastazios at all relevant times. *See id.* Consequently, we attribute Deari's culpable mental state to Pastazios. And as for Deari's culpable mental state, it was established at trial that Deari knew Doe was underage.[8] Accordingly, any mens rea element in the criminal statute is satisfied, and thus Appellants' counterargument regarding mens rea fails.[9]

---

[8] Although Deari denied knowing Doe's precise age, Deari conceded he thought Doe was underage and knew Doe could not be served alcohol at Back 9. In any event, Deari also testified that he signed an agreement with the Texas Alcoholic Beverage Commission, stipulating to the crime of serving alcohol to a minor.

[9] Our conclusion should come as no surprise to Doe. During trial, Doe's sole theory as to Pastazios' liability for her injuries was that Deari was the vice-principal. Nor should this outcome surprise the Trustee. The Trustee's sole defense to Pastazios' liability was that Deari was not the vice-principal. By imposing liability on Pastazios, the state court thus found to the contrary. As even Doe's counsel noted, the Trustee did not raise any challenge to the state court's findings or judgment. The Trustee also let the appeal deadline lapse despite Century's repeated offers to fund an appeal.

No. 17-10026

3.

In sum, because the record shows that all of Pastazios' liability was caused by its own criminal act of furnishing alcohol to a minor, the criminal-act exclusion excuses Century from any duty to indemnify Pastazios.

IV.

The parties also dispute whether Appellants' extra-contractual counterclaims against Century were waived due to Appellants' failure to preserve them in their opening briefs on appeal. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal."). Appellants argue that they had no obligation to brief those issues on appeal, as those claims were dependent upon coverage under the Policy. Because the district court ruled there was no coverage, they argue, they had no duty to brief anything but the coverage issue on appeal.[10]

We do not need to rule on this matter. Because we find that all of Doe's claims against Pastazios are not covered under the Policy, and because Appellants concede that all of their extra-contractual claims are dependent upon a threshold finding of coverage, those claims fail.

V.

To sum up: We hold that the criminal-act exclusion bars all coverage for Century's duties to both defend and indemnify Pastazios in the underlying suit brought by Jane Doe. The district court's grant of summary judgment in favor of Century is

AFFIRMED.

---

[10] Appellants acknowledge they have no case law to support this position.

16