# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50080

United States Court of Appeals
Fifth Circuit

**FILED**
November 4, 2019

Lyle W. Cayce
Clerk

NANCY C. CALDERON; PHILLIP R. CALDERON,

> Plaintiffs - Appellants

v.

BANK OF NEW YORK MELLON, formerly known as Bank of New York, as Trustee for the Certificateholders of the CWABS, Incorporated, Asset-Backed Certificates Series 2006-22; SPECIALIZED LOAN SERVICING, L.L.C.,

> Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:17-CV-933

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

PER CURIAM:[*]

Nancy C. Calderon and Phillip R. Calderon challenge the grant of summary judgment in favor of Bank of New York Mellon ("Bank"). In granting the Bank's summary judgment motion, the district court held that res judicata barred the Calderons' Texas Constitutional claims, and that there was no

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-50080

genuine dispute of material fact regarding the Bank's abandonment of its acceleration notice. The Calderons argue the district court erred by applying res judicata to dismiss a claim under the Texas Constitution that they did not raise, and the Bank's purported abandonment of acceleration letter was ambiguous, therefore creating a genuine fact issue for a jury to decide. We AFFIRM.

FACTS AND PROCEDURAL HISTORY

In 2006, the Calderons purchased a house located at 2125 West Gramercy Place, San Antonio, Texas 78201, by executing a Texas Home Equity Adjustable Rate Note and Deed of Trust in the amount of $414,500. The Note and Deed of Trust were then assigned to the Bank. The Calderons indisputably defaulted on the Note and Deed of Trust.

As a result, the Bank sent the Calderons a Notice of Acceleration on August 10, 2010, accelerating the debt on the Note. (The date of this acceleration is disputed. The Calderons claim the loan was accelerated on March 10, 2010.) On August 19, 2010, the Calderons executed a Loan Modification Agreement for $509,033.06. On August 30, 2010, the Bank sent the Calderons a Letter of Abandonment, describing the Bank's abandonment of the August 10 acceleration due to the loan modification.

A year later, on August 14, 2011, the Calderons again defaulted, and the Bank sent a Notice of Default seeking only the past due payments totaling $20,203.68. The Calderons filed suit in state court against Bank of America, acting as the Bank's mortgage servicer, on February 6, 2012, contending the Bank did not have authority to foreclose on the property, and requesting a declaratory judgment, quiet title, injunctive relief, and attorney's fees. The case was removed to federal court. On July 27, 2012, the Bank sent the

No. 19-50080

Calderons a Payoff Demand Statement.  On April 23, 2013, the court granted summary judgment for Bank of America in the 2012 suit.

On April 25, 2013, the Calderons sent the Bank a letter stating that the 2010 Loan Modification Agreement violated the Texas Constitution.  In response, on June 27, 2013, the Bank sent a Notification of Cure, denying all the Calderons' complaints and rescinding the Loan Modification.

Also in 2013, the Calderons were named class representatives in a class-action lawsuit in the Southern District of Texas against Bank of America, the mortgage servicer for their loan.  Following a decision favorable to the Bank of America on a certified question to the Texas Supreme Court, the case was voluntarily dismissed without prejudice.

On May 15, 2014, the Bank sent the Calderons a new Notice of Acceleration.  On September 15, 2016, the Bank sent the Calderons a new Notice of Default and Intent to Accelerate.  On March 14, 2017, the Bank sent another new Notice of Acceleration.

On August 14, 2017, the Calderons filed a complaint in state court, and the Bank timely removed this action to federal court.  On January 17, 2018, the Calderons filed an amended complaint to quiet title alleging that the Bank accelerated the loan on August 10, 2010, and the Bank never abandoned that acceleration, and, even if they had, the Calderons had detrimentally relied on the acceleration, and, therefore, the statute of limitations had run on the Bank's ability to foreclose on the property.  The Bank moved for summary judgment, which the district court granted.

ANALYSIS

Texas substantive law applies to this diversity-jurisdiction case.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938). We review the res judicata effect of a prior judgment de novo. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d

559, 571 (5th Cir. 2005).  Likewise, the district court's "grant[] and denial[] of summary judgment [is reviewed] de novo." *Century Surety Co. v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018) (quotations and citation omitted).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### A.     Texas Constitutional Claims

The Calderons argue that the district court erred by finding a constitutional claim regarding the 2010 Loan Modification barred under res judicata.  In Texas, for res judicata to apply, three elements must be present: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).  The Calderons dispute the first and third elements.

The Calderons assert that res judicata is not at issue because they did not raise a claim under the Texas Constitution in this case.  It is true that it was not properly raised in pleadings, but it was relied upon in the Calderons' response to the Bank's summary judgment motion, prompting the district court to address the Calderons' argument.  *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990).

In so doing, the district court was correct that any such claim would be precluded.  Texas law requires a "transactional approach" to claim preclusion: "A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992).  Thus, the claim need not be previously

*actually* raised if it previously *could and should have been* raised. The Calderons did not challenge the constitutionality of the Loan Modification in the 2012 lawsuit. However, they clearly could have. That case involved the same Note and Deed of Trust as this one. The modification in question occurred in 2010, well before the 2012 suit was filed. The Calderons cannot now assert a constitutional claim that they neglected to raise in 2012. Therefore, to the extent that any constitutional claim was raised or relied upon in this case, we affirm the district court's judgment on the issue of res judicata.

### B.     *Abandonment of Acceleration*

Under Texas law, "[a] person must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a). If foreclosure does not occur within this limitations period, "the real property lien and a power of sale to enforce the . . . lien become void." *Id.* § 16.035(d). If the note secured by the property contains an optional acceleration clause, "the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

The acceleration may be abandoned, either by the lender's unilateral actions or by agreement, in which case a new limitations period will begin to run when the lender exercises its option to re-accelerate the note. *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015); *Holy Cross*, 44 S.W.3d at 566–67. "[T]he request for payment of less than the full obligation—after initially accelerating the entire obligation—[is] an unequivocal expression of the bank's intent to abandon or waive its initial acceleration." *Martin v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016). Further, "the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Rivera v. Bank*

*of Am., N.A.*, 607 F. App'x 358, 360 (5th Cir. 2015) (per curiam) (quoting *Holy Cross*, 44 S.W.3d at 566–67).

Viewing the facts in the requisite light most favorable to the Calderons, there is no genuine dispute of material fact. The August 30, 2010, Letter of Abandonment unequivocally abandoned the acceleration. Even had it not, the August 14, 2011, Notice of Default requesting only the past due amounts, substantially less than the full amount owed, acted as an abandonment of the acceleration. *See Martin*, 814 F.3d at 318. Once again, in the 2013 Notification of Cure, the Bank sent notice the Calderons could cure their default by remitting a reinstatement amount of $93,169.39, substantially less than the full amount of the loan. All of these actions sufficed to abandon the acceleration of the loan prior to the statute of limitations cutoff, even assuming the note was accelerated on the earlier March 10, 2010, date.

The only argument the Calderons raise is that the 2013 Notification of Cure unwound everything done since the 2010 loan modification. Therefore, they claim any intervening abandonment of acceleration was undone, and they were restored to the same position they were at on August 10, 2010—with an accelerated loan. There is no basis for this assertion, and they cite no authority for this proposition. The main case they rely upon, *Wilmington Trust, N.A. v. Rob*, 891 F.3d 174 (5th Cir. 2018), involved a reinstatement of the loan followed by a foreclosure lawsuit purporting to trigger acceleration of the loan. Under a different set of facts from this case, the court held that the bank failed to show a "notice of intent to accelerate prior to filing suit" such that it was not entitled to foreclosure. *Id.* at 178.

The Notification of Cure stated it was returning the Calderons to default status. In any event, as noted, the Notification of Cure would have acted as an abandonment itself if the loan was accelerated, and it was sent on June 27,

No. 19-50080

2013, well within the four-year statute of limitations.   Additionally, the Calderons agree the Notification of Cure did not rescind the intervening payments made by them after the 2010 modification but prior to the notification of cure.  As noted above, the Bank's acceptance of payments acted as an abandonment.  *See Rivera*, 607 F. App'x at 360; *Holy Cross*, 44 S.W.3d at 566–67.

Finally, the Calderons did not assert their detrimental reliance claim on appeal, and thus, have abandoned it.  *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).  Even if they had asserted it, we held earlier this year that no such claim is available under Texas law.  *Jatera Corp. v. US Bank Nat'l Ass'n*, 917 F.3d 831, 837 (5th Cir. 2019).

AFFIRMED.