# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2025

Lyle W. Cayce
Clerk

_____

No. 22-20228

_____

Paloma Resources, L.L.C.; Paloma Operating Company, Incorporated,

*Plaintiffs—Appellants*,

*versus*

Axis Insurance Company,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-247

_____

Before Stewart, Dennis, and Richman, *Circuit Judges*.

Priscilla Richman, *Circuit Judge*:[*]

Paloma Resources, L.L.C. and its wholly owned subsidiary, Paloma Operating Company, Inc. (collectively, Paloma) appeal a grant of summary judgment in favor of Paloma's insurance carrier, Axis Insurance Company (Axis). The district court first granted a partial summary judgment, holding that the intellectual property exclusion (IP Exclusion) in Paloma's insurance

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

policy applied to Paloma's claim.  It then granted summary judgment, holding that Axis was not required to indemnify Paloma for expenses Paloma incurred on behalf of defending its employee, Mauricio Toro.  We vacate the first grant of summary judgment as to the IP Exclusion and remand for further proceedings.  We affirm the grant of summary judgment holding that Axis was not required to indemnify Paloma for expenses Paloma incurred in defending its employee, Toro.

## I

Paloma sued its insurance carrier, Axis, and business competitor, Continental Resources, Inc. (Continental) in Texas state court seeking a declaration that Axis improperly denied Paloma coverage in an earlier lawsuit between Paloma and Continental in Oklahoma state court.  In the Oklahoma suit, Continental alleged that Mauricio Toro, a Paloma employee, colluded with two Continental employees over a period of roughly six months to steal and transfer confidential information from Continental to Paloma's computer network so Paloma could "unfairly compete with Continental."  Continental alleged that Paloma used the prospect of employment to induce the Continental employees to steal the confidential information.  Paloma and Continental began settlement discussions as early as May 12, 2017.  Axis was not notified of Paloma's claim until July 28, 2017.  Paloma and Continental settled the Oklahoma lawsuit, with Paloma stipulating that the suit involved the unauthorized disclosure of and access to Continental's confidential information.  Additionally, as part of the settlement, Continental agreed to release Paloma's employees from liability arising out of the allegations in the suit and agreed to dismiss its claims against Toro.  Paloma then turned to Axis to recover its defense costs and fund the settlement.  Axis denied

coverage, citing the IP Exclusion in the insurance policy as applying to Paloma's claim.

Paloma then sued Axis and Continental in Texas state court seeking in relevant part a declaration that Axis improperly denied coverage under the terms of its insurance policy. Continental removed the case to federal district court. Axis moved for summary judgment, arguing the IP Exclusion applied to Paloma's claim and that Axis, as a result, owed Paloma neither a duty to defend nor a duty to indemnify Paloma in the Oklahoma suit. Axis argued alternatively that if it did have a duty to defend Paloma, it was not required to pay any defense costs incurred by Paloma before being formally notified of the lawsuit by Paloma. The district court granted Axis's first motion for summary judgment, holding that Axis had neither a duty to defend nor a duty to indemnify Paloma because the IP Exclusion applied to Paloma's claim. Axis then moved for summary judgment as to Paloma's claim that Axis was required to reimburse Paloma for any expenses Paloma incurred on behalf of defending its employee, Mauricio Toro, in the Oklahoma lawsuit. The district court granted Axis's second motion for summary judgment "[f]or the reasons stated in the Court's opinion granting Axis's [first] motion for partial summary judgment." Paloma now appeals both grants of summary judgement.

We review the district court's grants of summary judgment de novo.[1] Summary judgment is granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2] "We

_____

[1] *Century Sur. Co. v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018).

[2] FED. R. CIV. P. 56(a).

may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision."[3]

## II

Paloma first contests the district court's determination that Paloma's construction of the IP Exclusion was unreasonable. The IP Exclusion states:

> The Insurer shall not be liable under Insuring Agreement C. Company Liability for Loss on account of any Claim . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, or service mark or the misappropriation of ideas or trade secrets, or the unauthorized disclosure of or access to confidential information; provided that this exclusion shall not apply to Loss on account of a securities Claim, a Securityholder Derivative Demand, or a derivative action.

Paloma argues that, as the exclusion is written, the placement of the determiner "the" immediately preceding the "misappropriation of ideas or trade secrets" clause in the exclusion suggests no carryover modification by the phrase "actual or alleged" to the clause—the result being actual, as opposed to alleged, misappropriation of trade secrets are required to trigger application of the exclusion.

The district court determined that Paloma's construction of the IP Exclusion was unreasonable. It concluded that "Paloma's focus on the phrase 'actual or alleged' is misplaced," and "there is no indication whatsoever that the 'misappropriation of trade secrets' and 'unauthorized access to confidential information' clauses of the intellectual property

---

[3] *Century Sur.*, 893 F.3d at 332 (quoting *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (per curiam)).

exclusion can only be triggered by an actual determination of these types of claims." The district court instead contrasted the language of another policy exclusion, the "illegal profit/conduct" exclusion, which expressly requires an actual determination of a claim to apply, with the "arising out of" language within the IP Exclusion, which it interpreted as providing broad coverage to the exclusion. On that basis, the district court concluded that the IP Exclusion unambiguously applied to bar coverage over Paloma's claim.

Paloma urges this court to read the exclusion in the following manner:

Intellectual Property: based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving

- any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, or service mark or
- the misappropriation of ideas or trade secrets, or
- the unauthorized disclosure of or access to confidential information;

Paloma argues that under the exclusion, the phrase "actual or alleged" only modifies "infringement" and does not carry over to modify the following "misappropriation" clause. It argues that it makes no sense grammatically to read the exclusion as applying to "any actual or alleged . . . the misappropriation of trade secrets" and that the inclusion of the determiner "the" before "misappropriation" signals a break from the series of infringement actions modified by the phrase "actual or alleged" per the series-qualifier interpretive canon.[4] It argues that such a construction is

_____

[4] *See United States ex rel. Vaughn v. United Biologics, L.L.C.*, 907 F.3d 187, 195 (5th Cir. 2018) ("[The] principle of interpretation, known as the 'Series-Qualifier Canon,' applies only when context clearly establishes that it is intended. This is usually the case when the nouns and verbs are listed without any intervening modifiers. . . . The typical way to break the series is to insert a determiner." (internal citations omitted)).

consistent with the remainder of the policy's exclusions, as every other exclusion containing the introductory phrase "based upon, arising out of or indirectly resulting from, in consequence of, or in any way involving" ends with the word "involving" before listing out the separate actions covered by the exclusion. It argues that, because "actual or alleged" expressly modifies only "infringement" under the exclusion, such a reading cannot be imputed to the other clauses, including the "misappropriation" clause, as such a reading would violate the *expressio unius* interpretive canon that "the expression of one thing implies the exclusion of others."[5]

Paloma's construction is reasonable. In *United States ex rel. Vaughn v. United Biologics, L.L.C.*,[6] this court was tasked with interpreting a statutory provision requiring a court and the Attorney General to "give *written* consent to the dismissal [of FCA actions] and their reasons for consenting."[7] We concluded that "written" applied only to "consent" and not to "reasons" because the possessive determiner "their" was attached to "reasons," which "ma[de] clear that 'written' was not intended to modify both 'consent' and 'reasons'" under the series-qualifier canon.[8] In *Thomas v. Reeves*,[9] this court sitting en banc was tasked with interpreting a statutory provision providing that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative

---

[5] *Hotze v. Hudspeth*, 16 F.4th 1121, 1128-29 (5th Cir. 2021) (OLDHAM, J., dissenting).

[6] 907 F.3d 187 (5th Cir. 2018).

[7] *Id.* at 195 (emphasis added) (quoting 31 U.S.C. § 3730(b)(1)).

[8] *Id.*

[9] 961 F.3d 800 (5th Cir. 2020) (en banc).

body."[10]  This court considered whether the phrase "the constitutionality of," and therefore the requirement for a three-judge panel, applied only to "the apportionment of congressional districts" or also to "the apportionment of any statewide legislative body."[11]  JUDGE COSTA's concurring opinion reasoned that the inclusion of "the" before "apportionment of any statewide legislative body" did not indicate a break so that the modifier "constitutionality of" applied only to "the apportionment of congressional districts."[12]  Making this argument, JUDGE COSTA recognized that "[t]o be sure, '[t]he typical way in which syntax would suggest no carryover modification' in a series is to repeat a determiner like 'the' before one of the series' terms."[13]  However, JUDGE COSTA noted that the series-qualifier canon is "highly sensitive to context,"[14] and, given "it took more than forty years for anyone to notice" the redundant article; the fact that such a reading would "create[] a more convoluted statutory scheme"; and "[m]ost importantly," "the use of 'the' before each parallel term would not cut off the modifier 'constitutionality of' in everyday English," the inclusion of "the" before "apportionment of any statewide legislative body" did not break carryover modification by the term "the constitutionality of."[15]

The context of the exclusion here, however, is different.  As Paloma points out, it makes no sense grammatically, in everyday English or

---

[10] *Id.* at 802 (COSTA, J., concurring) (quoting 28 U.S.C. § 2284(a)).

[11] *Id.* at 802-03.

[12] *Id.* at 804-05.

[13] *Id.* at 804 (alteration in original) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 148 (2012)).

[14] *Id.* (SCALIA & GARNER, *supra* note 13, at 150).

[15] *Id.*

otherwise, to read the exclusion as applying to "any actual or alleged . . . the misappropriation of trade secrets." This suggests the inclusion of the determiner "the" before "misappropriation" represents a purposeful break in the series, distinct from how the determiner "the" was employed in the statute in *Thomas*. Furthermore, this court need not assess whether the construction urged by Paloma is the "most natural reading," as in *Thomas*,[16] or even whether it is more reasonable in comparison to the construction favored by Axis and the district court. We need only conclude that the construction urged by Paloma is itself reasonable, irrespective of the construction urged by Axis.

As the district court noted, "Paloma's claim against Axis is governed by Texas law regarding the construction of insurance policies." "Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts generally."[17] The terms used in an insurance policy are given their "ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense."[18] The contract is "considered as a whole, with each part given effect and meaning."[19] "When the terms of an insurance policy are clear and unambiguous a court may not vary those terms."[20] "Although interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable, surplusage alone does not make an

---

[16] *Id.*

[17] *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996).

[18] *Id.* (citing *Sec. Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979)).

[19] *Id.*

[20] *Id.* (citing *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965)).

insurance policy ambiguous."[21]   "A contract . . . is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."[22]  However, under Texas law, when language in an insurance policy "is susceptible to more than one construction," it generally is "construed strictly against the insurer and liberally in favor of the insured."[23] Further, Texas courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."[24]

Because Paloma set forth a reasonable construction of the exclusion, we vacate the district court's grant of partial summary judgment finding Paloma's construction of the IP Exclusion was unreasonable, and we remand to the district court for further proceedings consistent with this opinion including determining whether under this construction Axis had a duty to defend or a duty to indemnify Paloma under the insuring agreement.

## III

Paloma also contends that the district court erred in granting its second grant of summary judgment in favor of Axis which disposed of Paloma's claim against Axis as to its employee, Mauricio Toro.  However, because Toro was not "legally obligated to pay" as a result of the settlement, Axis was not required to reimburse Paloma for expenses it incurred in

---

[21] *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) (citation omitted).

[22] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[23] *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 331 (5th Cir. 2022) (quoting *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 557 (5th Cir. 2020)).

[24] *Id.* (quoting *Gonzalez*, 969 F.3d at 561).

defending Toro. The district court therefore did not err in granting summary judgment to Axis on this claim.

Paloma argues that regardless of whether the IP Exclusion applies, this court should conclude that Axis was obligated to reimburse Paloma for "amounts it expended for the benefit of Toro" in relation to the Oklahoma lawsuit. Paloma points out that under the terms of the insuring agreement, for the applicable indemnification provision to apply, there are two requirements that must be met: first, Paloma must be "permitted or required by law to indemnify Toro;" second, "Toro [must] have become legally obligated to pay because of the Claim." Paloma argues that as a Delaware LLC, it was permitted to indemnify Toro pursuant to Delaware Law, which provides that "a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever."[25] Paloma argues that Toro is "legally obligated to pay" because the insurance policy does not say the obligation must be owed to a third party. Accordingly, Paloma argues, Toro could incur a payment obligation to Paloma as an indemnitor, thereby becoming legally obligated to pay Paloma. Paloma alternatively argues that it incurred purely vicarious liability for Toro's actions as its employee and that Toro is legally obligated to pay Paloma as a result. Axis argues Toro had no legal obligation to pay under the plain language of the term "legally obligated to pay," and, under the insurance policy, there is "no language extending coverage to amounts that [only] 'benefit' an individual Insured."

The relevant provision of the insuring agreement states:

The Insurer shall pay on behalf of the Insured Organization all Loss for which the Insured Organization is permitted or

---

[25] DEL. CODE tit. 6, § 18-108.

required by law to indemnify any Insured Individual, and that the Insured Individual has become legally obligated to pay on account of a Claim first made against such Insured Individual during the Policy Period . . . for a Wrongful Act.

Paloma first argues Toro is "legally obligated to pay" Paloma as an indemnitor and that this obligation is covered under the insuring agreement. Texas courts recognize that "[a] court judgment against an insured is not the only manner by which an insured can become legally obligated to pay a claim; a legal obligation can also arise out of a contract, such as a settlement."[26] Toro did not become legally obligated to pay as a result of the settlement. Rather, the settlement provides that Continental released Paloma's employees from all legal liability in connection with Continental's allegations in the Oklahoma lawsuit and further specifies Continental dismissed its claims against Toro. Axis is correct that Paloma's characterization that Toro is "legally obligated to pay" does not comport with the meaning of that phrase as previously recognized by Texas courts. Toro did not become legally obligated to pay as the result of the settlement and, therefore, Axis was not required to indemnify Paloma for costs expended on behalf of Toro.

Paloma's alternative vicarious liability argument is also without merit. Paloma argues that it has a common law indemnity claim against Toro and, as a result, Toro has a legal obligation to pay Paloma for amounts Paloma incurred. Common law indemnity exists in Texas only when the defendant's liability is purely vicarious.[27] Here, Paloma's liability was not purely

---

[26] *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 270 (Tex. 2021) (quoting 46 Tex. Jur. 3d Insurance Contracts and Coverage § 883); *see also HM Int'l, L.L.C. v. Twin City Fire Ins.*, 13 F.4th 356, 360 (5th Cir. 2021) (citing *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins.*, 130 S.W.3d 181, 189 n.3 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

[27] *St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 177-78 (Tex. App.—Amarillo 1997, writ denied) ("Common law indemnity . . . has been abolished in Texas except in

No. 22-20228

vicarious because Continental alleged in the Oklahoma suit that Paloma, itself, conspired with Toro to misappropriate the confidential information. Continental further alleged that Paloma made material misrepresentations to hide the extent of its misappropriation. Because these allegations involve Paloma's direct liability, Paloma was not sued in a purely vicarious capacity. Accordingly, the district court did not err in granting Axis's second motion for summary judgment.[28]

\* \* \*

For the foregoing reasons, we VACATE the first grant of partial summary judgment and REMAND for further proceedings consistent with this opinion, and we AFFIRM the second grant of partial summary judgment.

---

cases where the defendant's liability is purely vicarious" and is only "recoverable by a defendant who, through no act of his own, has been made to pay for the negligence of another defendant.").

[28] *See Century Sur. Co. v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018) ("We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." (quoting *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (per curiam))).