**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 7, 2011

Lyle W. Cayce
Clerk

No. 10-10123

VRV DEVELOPMENT L.P., formerly known as VRV DEVELOPMENT, INC.;
MARKEN MANAGEMENT GP L.L.C.; KENNY MARCHANT,

Plaintiffs - Appellants

v.

MID-CONTINENT CASUALTY COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, BENAVIDES, and CLEMENT, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This case arises from defendant Mid-Continent Casualty Co.'s refusal to defend and indemnify plaintiffs VRV Development L.P. ("VRV L.P."), Marken Management GP L.L.C. ("Marken"), and Kenny Marchant ("Marchant") (collectively, "VRV") in an underlying lawsuit in Texas state court. The district court held that VRV is not entitled to defense and indemnity because VRV L.P. is not covered under two commercial general liability ("CGL") policies issued to VRV Inc.[1] We affirm on the alternative ground that the underlying lawsuit does

---

[1] Effective January 1, 2005, VRV Inc. converted into a Texas limited partnership, VRV L.P. Marken was created as part of the conversion process and is the general partner of VRV L.P. Kenny Marchant is the sole limited partner of VRV L.P. Before the conversion, Kenny

No. 10-10123

not allege a covered occurrence of property damage within the effective period of the CGL policies.[2]

## I.  BACKGROUND

### A.  Events giving rise to this litigation

VRV Inc. entered into a contract to develop residential lots in Dallas County for Goodman Family of Builders, L.P.  Goodman's successor in interest, K. Hovnanian Homes - DFW, LLC ("Hovnanian"), eventually built new homes on the developed lots and sold them to individual homeowners.

In May 2004, during the development process, VRV Inc. purchased a CGL policy from Mid-Continent.  VRV Inc. was designated as the "named insured," and its form of business was identified as a "corporation."  Kenny Marchant was covered under the policy as VRV Inc.'s executive officer.  The policy was effective from May 25, 2004 until May 25, 2005.

VRV Inc. hired subcontractors to design and build retaining walls on the residential lots.  The retaining walls at issue in this case were located within the property lines of four individual homeowners.

Effective January 1, 2005, VRV Inc. converted into a Texas limited partnership, VRV L.P.  The CGL policy with Mid-Continent was renewed from May 25, 2005 until May 25, 2006, but VRV Inc. continued to be designated as the named insured, and its form of business continued to be identified as a "corporation."  There is no evidence or allegation that Mid-Continent was informed of VRV Inc.'s conversion into VRV L.P.  VRV L.P. did not renew its

---

Marchant was VRV Inc.'s president.

[2] We "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II, Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).

No. 10-10123

CGL policies after May 25, 2006.

A homeowner's inspection conducted sometime between May and July 2006 identified a crack in a retaining wall. In January and March 2007, after periods of heavy rainfall, the retaining walls collapsed, damaging the four homeowners' backyards and undermining support for a public utility easement owned by the City of Dallas.[3]

In April 2007, Hovnanian sued, in relevant part, VRV for negligence and breach of contract. The four homeowners intervened in the lawsuit and sued, in relevant part, VRV L.P. and Marken for negligence and breach of implied warranties. The City of Dallas also intervened and sued, in relevant part, VRV for breach of duty to provide lateral and adjacent support for the City's easement.[4]

VRV demanded defense and indemnity from Mid-Continent, and filed this action after Mid-Continent rejected its demands. Mid-Continent asserts that VRV is not insured under the CGL policies issued to VRV Inc., no property damage is alleged to have occurred during the effective policy periods, and certain policy exclusions preclude coverage. The district court granted summary judgment to Mid-Continent solely on the ground that VRV is not insured under the CGL policies.

---

[3] It is not clear whether Hovnanian's petition, which alleges damage to "afflicted properties" and properties "neighboring" the retaining wall, alleges that additional property was damaged by the collapse of the retaining walls. For the purposes of this opinion, we assume that it does and include these "afflicted properties" in our references to the four homeowners' backyards.

[4] References in this opinion to the "Hovnanian plaintiffs" refer collectively to Hovnanian, the homeowners, and the City.

3

## B.     The CGL policies

The two CGL policies at issue in this case are standard in the industry and identical in most respects.  The CGL policies require Mid-Continent to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage,'" and to defend VRV against any lawsuit seeking such damages.  The "property damage" must, however, be caused by an "occurrence" during the policy period.  "Property damage" means:

> (a) physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> (b) loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

An "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Property damage that occurs during the policy period "includes any continuation, change or resumption of that . . . 'property damage' after the end of the policy period."

Notwithstanding Mid-Continent's general obligation to cover property damage that occurs during the policy period, the CGL policies at issue in this case do not cover property damage to work performed by VRV or its subcontractors. Specifically, exclusion (*l*) to the CGL policies precludes coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"[5]  "Your work" means,

---

[5] We note that Mid-Continent's standard CGL policy does not exclude property damage to work performed by an insured's *subcontractors*, but this "subcontractor exception" was removed by an endorsement to VRV's policies. *See generally Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)  ("More recently, the Insurance Services

No. 10-10123

inter alia, "[w]ork or operations performed by you or on your behalf."   The
"[p]roducts-completed operations hazard" means any property damage "occurring
away from premises you own or rent and arising out of . . . 'your work' except . . .
[w]ork that has not yet been completed or abandoned."   Additionally, to the
extent property damage is not included in the "products-completed operations
hazard," exclusion (j)(6) to the CGL policies precludes coverage for damage to
"[t]hat particular part of any property that must be restored, repaired or
replaced because 'your work' was incorrectly performed on it."

## II. STANDARD

The district court's summary judgment order is reviewed de novo.
*Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010).   Summary
judgment is appropriate when "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a
matter of law."   FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
587 (1986). All reasonable inferences are drawn in favor of the nonmoving party,
but a party cannot defeat summary judgment with conclusory allegations or
unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th
Cir. 1994).   VRV bears the burden of showing that the allegations in the
underlying lawsuit are covered by the CGL policies, but Mid-Continent bears the
burden of establishing that a policy exclusion applies. *See, e.g.*, *Nat'l Union Fire
Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir.
2008); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005).

Office has issued an endorsement that may be included in the CGL to eliminate the
subcontractor exception to the 'your-work' exclusion."); *Pine Oak Builders, Inc. v. Great Am.
Lloyds Ins. Co.* 279 S.W.3d 650, 653 (Tex. 2009).

5

No. 10-10123

## III. DISCUSSION

The district court held that VRV is not entitled to defense and indemnity because only VRV Inc. and not VRV L.P. is insured under the CGL policies. We need not determine whether VRV L.P. acquired some or all of VRV Inc.'s rights to defense and indemnity when the latter converted its organizational form pursuant to Article 5.20 of the Texas Business Corporations Act.[6] Even if VRV Inc.'s rights to defense and indemnity transferred by operation of law to VRV

---

[6] At the time of the conversion, Article 5.20 provided that after an entity's conversion from one organizational form into another:

> (1) the converting entity shall continue to exist, without interruption, but in the organizational form of the converted entity rather than in its prior organizational form;

> (2) all rights, title, and interests to all real estate and other property owned by the converting entity shall continue to be owned by the converted entity in its new organizational form without reversion or impairment, without further act or deed, and without any transfer or assignment having occurred . . .; [and]

> (3) all liabilities and obligations of the converting entity shall continue to be liabilities and obligations of the converted entity in its new organizational form without impairment or diminution by reason of the conversion . . . .

Texas Business Corporations Act, art. 5.20(A)(1)-(3) (1997).   Article 5.20 is now codified as amended at Texas Business Organizations Code § 10.106 (2006).

6

No. 10-10123

L.P.,[7] the Hovnanian plaintiffs still do not allege a covered occurrence of property damage during the effective period of the CGL policies.

## A.    Duty to defend

Texas substantive law governs the insurance contracts at issue in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274, 276 (5th Cir. 2007). Under Texas law, an insurer's duty to defend is determined by the "eight corners" rule, that is, by the four corners of the underlying pleadings and the four corners of the relevant insurance policies. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). In most cases, the underlying pleadings and insurance policies are the only documents relevant to an insurer's duty to defend. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599-600 (5th Cir. 2006); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). The insurer is obligated to defend the insured if the underlying allegations, taken as true, potentially assert a claim for coverage under the insurance policies. *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 393 (5th Cir.

---

[7] *Compare Keller Founds., Inc. v. Wausau Underwriters Ins. Co.* __F.3d__, 2010 WL 4673026, at \*5 (5th Cir. 2010) (holding that rights to defense and indemnity did not follow partial sale of assets because "the liabilities in question were assumed through a contract that also specifically excluded the transfer of the insurance policy covering those liabilities"), *with Imperial Enters., Inc. v. Fireman's Fund Ins. Co.,* 535 F.2d 287, 292-93 (5th Cir. 1976) (holding that "no-assignment clause should not be applied ritualistically and mechanically to forfeit coverage," at least in circumstances when the policy transferred by operation of law as opposed to personal assignment); *see also In re Baird*, 567 F.3d 1207, 1214 (10th Cir. 2009); *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170-71 (2d Cir. 2006); *N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1358 (9th Cir. 1992); *Ocean Accident & Guar. Corp. v. Sw. Bell Tel. Co.*, 100 F.2d 441, 446 (8th Cir. 1939); 2 COUCH ON INSURANCE § 34:25 (3d ed. 2010); 3 COUCH ON INSURANCE § 35:7 (3d ed. 2010).

No. 10-10123

2001).  The duty to defend does not rely on the truth or falsity of the underlying allegations, and facts ascertained before suit, developed in the process of litigation, or determined by the ultimate outcome of the suit do not affect the duty to defend.  *OOIDA Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).  All doubts regarding the duty to defend are resolved in favor of the insured.  *Northfield*, 363 F.3d at 528.  Nonetheless, in reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories advanced.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  The court may not "read facts into the pleadings" or "imagine factual scenarios which might trigger coverage."  *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009).  "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured."  *Merchants Fast*, 939 S.W.2d at 141.

Our first step is to identify the relevant allegations in the four corners of the underlying pleadings.  Each of the Hovnanian plaintiffs alleges that VRV or its subcontractors negligently designed and built the retaining walls during the policy period, that is, between May 25, 2004 and May 25, 2006.  The homeowners allege that they identified a crack in one retaining wall sometime between May and July 2006, and we assume that this crack existed during the policy period.  The homeowners also allege that the retaining walls ultimately collapsed into their backyards in January and March 2007.  Lastly, the City alleges that the "collapse" and "failure" of the retaining walls affected the City's use and

8

No. 10-10123

enjoyment of a public utility easement. Specifically, the City alleges that "[t]he collapse deprived [a water transmission main] of its natural lateral support of soil." In short, read in light most favorable to VRV, the Hovnanian plaintiffs allege that the retaining walls were damaged during the policy period, and that the homeowners' backyards and the City's easement were damaged when the retaining walls collapsed in 2007.

Our next step is to determine whether these allegations support a claim for coverage under the four corners of the CGL policies. We find that they do not, because they do not allege a covered occurrence of property damage during the effective period of the CGL policies.

First, although the alleged property damage to the retaining walls occurred during the policy period, this damage is excluded from the CGL policies. In general, CGL policies protect an insured when his work damages another's property, but they do not serve as "a performance bond covering an insured's own work." *Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 226 (5th Cir. 2009). In this case, exclusion (*l*) precludes coverage for damage to work completed by VRV and its subcontractors, and the Hovnanian plaintiffs allege that the retaining walls were built by VRV and its subcontractors. The alleged damage to the retaining walls thus is excluded from the CGL policies and does not trigger Mid-Continent's duty to defend. *See, e.g.*, *id.* (observing that "your work" exclusion precludes coverage for damage to foundation built by insured).[8]

---

[8] *See also Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 11-12 (Tex. 2007) (observing that "your work" exclusion "generally excludes coverage for 'property damage' to the insured's completed work"); 9A COUCH ON INSURANCE § 129:17 (3d ed. 2010) ("[W]here all of the damage that is being claimed is damage to the work of the insured which is caused by the work of the insured, the 'your work' exclusion will apply to preclude coverage.").

No. 10-10123

Second, the alleged damage to the homeowners' backyards and the City's easement occurred only when the retaining walls collapsed in 2007, well after the expiration of the CGL policies in May 2006. Because this property damage did not occur during the policy period, it does not trigger Mid-Continent's duty to defend.

VRV points out that property damage that occurs during the policy period "includes any continuation, change or resumption of that . . . 'property damage' after the end of the policy period." Thus, according to VRV, we should deem the damage to the homeowners' backyards and the City's easement to have occurred at the same time as the underlying damage to the retaining walls. We rejected an almost identical bootstrapping argument offered by an insurance company in *Wilshire Insurance v. RJT Construction*. 581 F.3d at 224. In *Wilshire*, RJT leveled the foundation of a home in 1999. *Id.* In 2005, the homeowner observed cracks in the walls and ceilings of his home. *Id.* In 2007, the homeowner sued RJT for negligence. *Id.* RJT was covered by a CGL policy only from 2004 through 2006. *Id.* RJT's insurer sought a declaratory judgment that it had no duty to defend or indemnify on the ground that the damage occurred at the time of the faulty foundation work, that is, before the effective date of the CGL policy. We held that cracks in the house were an occurrence of covered property damage during the policy period. *Id.* at 225. We explained that "[t]his is not a case where latent internal rot long lies undiscovered before external signs warn of the festering damage. The cracks are not merely a warning of prior undiscovered damage; they are the damage itself. It is of no moment that the faulty foundation work occurred [before the policy period] . . . ." *Id.* In other words, we refused to

No. 10-10123

conflate an allegedly defective foundation with the separate property damage that ultimately resulted.

Although the timing of the relevant insurance policy distinguishes the result in *Wilshire* from this case, the reasoning adopted in *Wilshire* and now applied this case is the same. What *Wilshire* recognized is that "property damage" does not necessarily "occur" at the first link in the causal chain of events giving rise to that property damage. Nearly all property damage will be traceable back to earlier events, but this is not the nature of our inquiry. As the Texas Supreme Court has instructed, we must focus on the time of the "actual physical damage" to the property, and not the time of the "negligent conduct" or the "process . . . that later results in" the damage. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24, 29-30 (Tex. 2008). It may be difficult at times to determine precisely when actual physical damage occurs, but we must draw a line somewhere. *Id.* at 29 ("Pinpointing the moment of injury retrospectively is sometimes difficult, but we cannot exalt ease of proof or administrative convenience over faithfulness to the policy language.").

Here, the homeowners' backyards and the City's easement were actually, physically damaged not by the negligent design and construction of the retaining walls, nor by a continuous exposure to the walls between May 2004 and May 2006, but rather by the "collapse" and "failure" of the walls in January and March 2007. In other words, this is not a case involving festering, undiscovered damage to covered property during the policy period. *See, e.g.*, *id.,* 23, 31 (finding duty to defend when water damage to house began shortly after application of defective stucco, and contractor was insured at the time the water damage began). This is a case in which potentially covered property damage occurred only after the

11

policy period.  Of course, the damage to the retaining walls may have festered and changed over time, but the damage to the retaining walls is excluded from the CGL policies.  Because the Hovnanian plaintiffs have not alleged a covered occurrence of property damage during the effective period of the CGL policies, they have not triggered Mid-Continent's duty to defend.

**B.    Duty to indemnify**

Unlike the duty to defend, an insurer's duty to indemnify is based on the "actual facts" brought out in the underlying action.  *OOIDA*, 579 F.3d at 472.  Thus, an insurer's duty to indemnify typically can be resolved only after the conclusion of the underlying action.  *Id.*  The duty to indemnify may be resolved at summary judgment, however, when "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."  *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis omitted).  In this case, Mid-Continent has no duty to indemnify for the same reason it has no duty to defend: there is no evidence of a covered occurrence of property damage within the effective period of the CGL policies.  Without evidence of a covered occurrence of property damage, there is no possibility that Mid-Continent will ultimately have a duty to indemnify VRV.  At summary judgment, it was VRV's burden to set out specific facts demonstrating that its claim for indemnity was covered by the CGL policies.  *See, e.g.*, *Puget Plastics*, 532 F.3d at 401.  VRV did not satisfy this burden, and Mid-Continent therefore was entitled to summary judgment.

## IV.  CONCLUSION

For the reasons stated, Mid-Continent was entitled to summary judgment on VRV's claims for defense and indemnity.

AFFIRMED.