# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2020

Lyle W. Cayce
Clerk

No. 19-10565

GILBERT GONZALEZ, doing business as GG Construction,

     Plaintiff-Appellee,

v.

MID-CONTINENT CASUALTY COMPANY,

     Defendant-Appellant.

———————————

Appeals from the United States District Court
for the Northern District of Texas

———————————

Before HAYNES and OLDHAM, Circuit Judges, and HANEN, District Judge.[*]
ANDREW S. OLDHAM, Circuit Judge:

Gilbert Gonzalez allegedly damaged a house's electrical wiring while installing siding. Although Gonzalez had purchased a commercial general liability insurance policy underwritten by Mid-Continent Casualty Company, Mid-Continent refused to provide him with defense and indemnity for the accident. Gonzalez sued Mid-Continent. The district court granted Gonzalez a partial final judgment, holding that Mid-Continent owed him a duty to defend. We affirm.

---

[*] District Judge for the Southern District of Texas, sitting by designation.

I.

Norman Hamilton hired Gilbert Gonzalez to install new siding on his house during the summer of 2013. To cover his liability for any accidents, Gonzalez bought a commercial general liability ("CGL") insurance policy underwritten by Mid-Continent. Gonzalez's initial policy lasted from July 15, 2012, through July 15, 2013. He renewed the policy for an additional year, though he canceled it on June 6, 2014. It is undisputed that the policy covered Gonzalez's work on Hamilton's house.

In December 2016, Hamilton's house was damaged in a fire. Hamilton and his insurance provider sued Gonzalez in Texas state court (the "Underlying Litigation"). Hamilton claimed that the fire started because Gonzalez negligently hammered nails through the house's electrical wiring when he installed the siding in 2013. Gonzalez sought defense and indemnity for the Underlying Litigation from Mid-Continent pursuant to the CGL policy he had purchased. Mid-Continent refused to provide either. So Gonzalez sued Mid-Continent, also in Texas state court, for breach of contract, breach of the duty to defend, breach of the duty to indemnify, and a declaratory judgment concerning the parties' rights and obligations under the insurance policies.

Mid-Continent removed the case to federal court and moved for summary judgment. The district court denied Mid-Continent's motion. Furthermore, it entered a partial final judgment holding that Mid-Continent owed Gonzalez a duty to defend, expressly finding "no just reason for delay" under Federal Rule of Civil Procedure 54(b). In a footnote, the court explained that "Plaintiff's claims regarding damages and the duty to indemnify remain pending." Mid-Continent appealed.

II.

Our review is *de novo. United States ex rel. Drummond v. BestCare Lab'y Servs.*, 950 F.3d 277, 280 (5th Cir. 2020). Because Gonzalez brings claims

under Texas law in this diversity-jurisdiction case, we apply the substantive law of Texas. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Under Texas law, Mid-Continent's duty to defend is governed by the "eight-corners rule." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494–95 (Tex. 2020). "The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from [the] terms of the policy and the pleadings of the third-party claimant." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Ibid.*

When the language of an insurance policy "is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured." *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)). "The court resolves all doubts regarding coverage in favor of coverage." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309 (5th Cir. 2010) (citing *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).

We begin by analyzing the applicable coverage provisions in the CGL policy and conclude that they cover the Underlying Litigation. We then consider the j(5) and j(6) exclusions from the CGL policy and conclude that they do not apply. These two conclusions lead us to hold that Mid-Continent has a duty to defend Gonzalez in the Underlying Litigation.

## A.

Under the eight-corners rule, "[t]wo documents determine an insurer's duty to defend—the insurance policy and the third-party plaintiff's pleadings in the underlying litigation, which the court must review 'without regard to

the truth or falsity of those allegations.'" *Amerisure*, 611 F.3d at 309 (quoting *GuideOne*, 197 S.W.3d at 308).

1.

We start with the third-party plaintiffs' operative pleading in the Underlying Litigation (the "Petition"). The Petition contains a single paragraph describing the factual allegations forming the basis of the plaintiffs' claims:

> The injuries and damages suffered by Plaintiffs and made the basis of this action arose out of an occurrence on or about December 1, 2016, at the property in question that relates back to construction and/or installation of siding occurring before the date of loss. The property in question had a fire caused by the construction and/or installation of siding by Defendants when Defendants improperly hammered nails through electrical wiring. Defendants were in charge of and oversaw the construction and/or installation of siding at the property in question, and their acts and/or omissions allowed a fire to occur.

In sum, the Petition alleges that when Gonzalez installed the siding on Hamilton's house in 2013, he hammered nails through electrical wiring and created a dangerous condition that caused a fire three years later in 2016.

Next, we consider the four corners of the CGL policy. The applicable coverage provision states:

> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury"

or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." And it defines "property damage" as including: "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." Putting this all together, then, the policy applies to (1) an accident (2) that causes physical injury to tangible property (3) during the policy period.

The Petition in the Underlying Litigation satisfies these three requirements. First, the accident. The Petition alleges that Gonzalez "improperly hammered nails through electrical wiring." That satisfies the policy's definition of an "occurrence," which means "an accident."

Second, the accident caused physical injury to tangible property. Wires are "tangible property." Piercing those wires with nails constitutes "physical injury." In addition, the Petition alleges that the accidental piercing of those wires caused the property damage that occurred in the 2016 fire.

Third, the property damage occurred during the policy period. There is no dispute that Gonzalez took all of his actions, including hammering the nails in question, during the policy period. That means the alleged damage to the electrical wiring happened during the policy period. In addition, the Petition alleges that the 2016 fire "relates back to [the] construction and/or installation of siding" in 2013. Recall that the CGL policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and it expressly states that "[a]ll such loss shall be deemed to occur at the time of the physical injury that caused it." As a result of this provision, the damage from the 2016 fire "shall be deemed" to have occurred in 2013 when

the electrical wires were damaged. Because it is alleged that both the damage to the electrical wires and the fire can be traced to 2013, when the policies were in effect, the property damage alleged in the Petition took place during the policy period. All three requirements of the CGL policy's coverage provisions have been satisfied, triggering Mid-Continent's duty to defend.

2.

This result is supported by *Don's Building Supply, Inc. v. OneBeacon Insurance Co.*, 267 S.W.3d 20 (Tex. 2008). The question in that case was whether property damage "occurred" when synthetic stucco imperceptibly allowed water to seep into the walls, or later when the property damage became noticeable from wood rot. Interpreting policy language identical to the language in this case, the court chose the former. *Id.* at 29–30. The court wrote: "Considering these provisions together and reading them for their plain meaning, we hold that property damage under this policy occurred when actual physical damage to the property occurred. . . . The date that the physical damage is or could have been discovered is irrelevant under the policy." *Id.* at 24. The court saw "little practical difference between an actual-injury rule and an exposure rule" in that case because "the homeowners' petition alleged" that the wood rot in their houses occurred at the first penetration of moisture. *Id.* at 29 n.34.

We likewise focused on the injury alleged in the underlying litigation in *Wilshire Insurance Co. v. RJT Construction, LLC*, 581 F.3d 222 (5th Cir. 2009). In that case, RJT leveled the foundation of a home in 1999—before the effective date of the CGL policy. The CGL policy took effect in 2004 and expired in 2006. *Id.* at 224. The homeowner allegedly observed physical injury to property— namely cracks in the walls and ceilings—during the policy period in 2005. *Ibid.* The insurance company attempted to avoid its duty to defend RJT on the theory that the cracks related back to negligence that occurred during the

foundation work in 1999. We held the insurance company had a duty to defend because the homeowner's complaint alleged actual physical damage to the home during the policy period in 2005, and the insurance company could not avoid that duty by pointing to other events outside the policy period. *Id.* at 225.

We again focused on the injury to property alleged in the underlying litigation in *VRV Development L.P. v. Mid-Continent Casualty Co.*, 630 F.3d 451 (5th Cir. 2011). That case involved a defective retaining wall built "within the property lines of four individual homeowners." *Id.* at 454. The wall did not collapse and damage the homeowners' backyards until after the coverage period expired. *Id.* at 457. We held that the damage to the homeowners' properties did not occur until the wall collapsed, and we distinguished the case from one involving "latent," "undiscovered" damage to the homeowners' properties that occurred during the policy period. *Id.* at 458.

All of these cases—*Don's Building*, *Wilshire*, and *VRV Development*— have one thing in common. They focus on the actual, physical damage alleged in the underlying litigation. If the only alleged damage occurred outside of the policy period, then there is no duty to defend (*VRV Development*). But if *any* of the alleged damage occurred during the policy period, then the duty to defend attaches (*Don's Building* and *Wilshire*). This case easily falls on the *Don's Building-Wilshire* side of the line.

3.

Here the Petition in the Underlying Litigation plainly alleges physical injury to property that occurred within the policy period. Start with 2013. The Petition alleges numerous negligent acts that occurred in that year. These include allegations of "substandard work," "failure to proper[l]y inspect . . . work on the property in question," "[f]ailure to perform safe construction and/or installation on the property in question," and "[o]ther acts of negligence." *See* Second Amended Petition ¶ 15(1), (5), (7), (19).

Furthermore, the Petition's description of the damages includes "actual damages to property contained within the property in question," such as the electrical wires. *Id.* ¶ 28. The Petition thus alleges that the electrical wires were damaged in 2013. That alone is sufficient to establish the duty to defend because the duty to defend arises when "the plaintiff alleges facts that would give rise to *any claim* against the insured that is covered by the policy." *Don's Building*, 267 S.W.3d at 31 (emphasis added); *see also, e.g.*, *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (noting that if a pleading "potentially includes a covered claim, the insurer must defend the entire suit"); *GuideOne*, 197 S.W.3d at 310 ("A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend."); *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004) ("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy.").

But the Petition alleges more. It *also* alleges that the 2016 fire "relates back to [the] construction and/or installation of siding" in 2013. That is, the theory of the Petition in the Underlying Litigation is that the pierced wires were latent fire hazards—like the latent water damage in *Don's Building*. *See* 267 S.W.3d at 24. Though Hamilton did not know about the wire damage until 2016 when the fire broke out, *Don's Building* says that the date the damage is discovered is "irrelevant." *Ibid.* So does the CGL policy, which deems property damage "to occur at the time of the physical injury that caused it" and not at the time it was discovered. Because we are bound by the Petition's allegations and the CGL policy's terms, we respectfully disagree with our learned colleague that "the alleged property damage does not relate back to the time of the negligent act when determining when the property damage occurred." *Post*, at 14 (Haynes, J., dissenting in part).

It's unclear whether the Petition's factual allegations are meritorious. But it is not our prerogative to evaluate the merits of Hamilton's lawsuit while ruling on the duty to defend. Under the "eight-corners rule," we look at the case *as it was pleaded by the plaintiffs. See, e.g., Don's Building*, 267 S.W.3d at 29 n.34; *GuideOne*, 197 S.W.3d at 308. And we must do so "without regard to the truth or falsity of those allegations." *GuideOne*, 197 S.W.3d at 308. Even "if the allegations are groundless, false, or fraudulent the insurer is obligated to defend." *Zurich*, 268 S.W.3d at 491 (quoting 14 COUCH ON INSURANCE § 200:19). The Petition clearly sets forth a theory in which electrical wires damaged in 2013 caused a fire in 2016, and regardless of the merits of that theory, it alleges that "actual physical damage to the property" occurred in 2013. *Don's Building*, 267 S.W.3d at 24. We therefore do not think this is a close case.

But even if it were, we'd be obliged to "construe the pleadings liberally" and "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich*, 268 S.W.3d at 491. Where the pleading "does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case . . . within the coverage of the policy." *Ibid.* (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). This presumption further corroborates our conclusion that the Underlying Litigation falls within the coverage provisions of the CGL policy and hence obligates Mid-Continent to defend Gonzalez.

B.

Mid-Continent argues that even if the Underlying Litigation falls within the coverage provisions of the CGL policy, the policy's j(5) and j(6) exclusions apply. Those exclusions preclude coverage for property damage to:

> (5) That particular part of real property on which you [(the insured)] or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

The policy goes on to define "your work" as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations." The parties do not dispute that the work Gonzalez was hired to perform was the construction and installation of the siding, which required hammering nails through the exterior wall of the home.

The j(5) and j(6) exclusions apply only to "that particular part" on which the insured "performed" work. The plain and ordinary meaning of "particular" is "[r]elating to a part or portion of anything; separate; sole; single; individual; specific; as, the *particular* stars of a constellation." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1783 (2d ed. 1934; 1950). "Part," in turn, means "something less than a whole." *Id.* at 1781. And "perform" means "[t]o carry out or into full execution; esp. some action ordered or prompted by another or previously promised; to put into complete effect; to fulfill; as, to *perform* another's will or one's vow; to *perform* certain conditions." *Id.* at 1818. Hamilton ordered Gonzalez to perform work on the siding. Gonzalez promised to do it. That was the individual, separate, sole, specific part of the home upon which Gonzalez agreed to perform work. Hamilton did not order Gonzalez— and Gonzalez did not promise—to work on the house's electrical wires. The

house's internal wiring system is entirely separate from its external siding. And no reasonable person would think that a promise to install siding on the outside of a home carries with it a promise to (and liability for) work on the electrical system inside the home. The siding and wires are, in short, separate "particular part[s]."

We have already discussed how Texas law requires us to construe insurance policies "strictly against the insurer and liberally in favor of the insured." *Barnett*, 723 S.W.2d at 666. When it comes to policy exclusions, however, "an even more stringent construction is required." *Ibid.* We "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Ibid.* (quoting *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977)).

This is not the first time our court has confronted exclusions like the ones in this case. *See Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 207–10 (5th Cir. 2014); *JHP*, 557 F.3d at 213–14; *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 474–76 (5th Cir. 2001); *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 499–500 (5th Cir. 2000). In each of those cases, we correctly applied *Barnett* and strictly construed the exclusion against the insurer.

The case of *Gore Design Completions, Ltd. v. Hartford Fire Insurance Co.*, 538 F.3d 365 (5th Cir. 2008), is particularly instructive on the meaning of "[t]hat particular part" in j(5) and j(6). In that case, Gore installed an in-flight entertainment/cabin management system ("IFE/CMS") on an aircraft. *Id.* at 367. Hartford issued a CGL policy to cover the work. One of Gore's subcontractors miswired an IFE/CMS component during installation and damaged the aircraft. *Ibid.* We held that the insurance company could not

dodge its duty to defend Gore by relying on a policy exclusion similar to j(6). We said that the exclusion applied only to the IFE/CMS—that is, the particular part upon which Gore worked—not the entire aircraft. *Id.* at 371. And we held that if the insurance company wanted to "leave an insured exposed for damages to the entire property," the exclusion should not contain language limiting it to "[t]hat particular part" of the property on which the insured worked. *Ibid.*

Like the insurance policy in *Gore*, the policy in this case excludes only damages to "[t]hat particular part" of the property on which the insured worked. Gonzalez was hired to work on the siding. That was the "particular part" of the property upon which he performed his "operations" and "work," for purposes of j(5) and j(6). Gonzalez was not hired to work on the electrical wiring. And he did not perform any work on the electrical wiring. Under *Gore* and the plain text of the CGL policy, the j(5) and j(6) exclusions do not apply.[†]

Mid-Continent's contrary interpretation of the exclusions renders the coverage provisions superfluous. Under Texas law, "[w]e must read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (citation omitted). But Mid-Continent urges us to conclude that Gonzalez performed work on every "particular part" of the property that was accidentally damaged, *including property damaged in the fire*. If that were true, it would be unclear what work the coverage

---

[†] Moreover, we have previously emphasized that the j(5) exclusion is written in the present tense. *JHP*, 557 F.3d at 213. It excludes certain damages to certain property on which certain people "*are* performing operations." *Ibid.* (emphasis added). We interpreted that present-tense clause to exclude only damages that occur during "the active performance of work." *Ibid.* Here, the fire damage occurred in 2016, years after the conclusion of "the active performance of work." Therefore, under *JHP*, the j(5) exclusion cannot apply to the fire damage.

provisions are doing. The insurance policy would cover certain "property damages" but then exclude all of them.

### III.

Finally, Mid-Continent asks us to hold that it does not owe Gonzalez a duty to indemnify. The duty to indemnify is distinct from the duty to defend. *Utica*, 141 S.W.3d at 203. Whereas the facts alleged by the plaintiff control the duty to defend, the "facts actually established in the underlying suit control the duty to indemnify." *GuideOne*, 197 S.W.3d at 310. The district court in this case entered a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) holding that Mid-Continent owed Gonzalez a duty to defend. In a footnote, the court said that "Plaintiff's claims regarding damages and the duty to indemnify remain pending." Because the district court never entered a final judgment regarding the duty to indemnify, we lack jurisdiction to consider that issue on appeal. *See* 28 U.S.C. § 1291.

\*       \*       \*

The district court's judgment is AFFIRMED.

HAYNES, Circuit Judge, dissenting in part:

I respectfully dissent from Part II of the majority opinion, and I would reverse the district court judgment on Mid-Continent's duty to defend.[1] My disagreement with the majority opinion revolves around when the property damage occurred. The majority opinion holds that the property damage occurred during the policy period: when Gonzalez allegedly nailed through electrical wiring in 2013. I would hold that the property damaged occurred after the policy period ended, when the fire broke out in 2016.

I agree that *Don's Building Supply, Inc. v. OneBeacon Insurance Co.*, 267 S.W.3d 20 (Tex. 2008), *Wilshire Insurance Co. v. RJT Construction, LLC*, 581 F.3d 222 (5th Cir. 2009), and *VRV Development L.P. v. Mid-Continent Casualty Co.*, 630 F.3d 451 (5th Cir. 2011), control this case. I also agree that, in these cases, the focus is on the actual, physical damage alleged in the underlying litigation. But these cases also hold that when an underlying plaintiff alleges actual, physical damage due to the insured's negligent conduct, the alleged property damage does not relate back to the time of the negligent act when determining when the property damage occurred.

For example, in *VRV Development*, the plaintiffs alleged that negligent construction of a retaining wall resulted in actual physical damage to the wall, which cracked, and to their backyards when the wall later collapsed. 630 F.3d at 454, 457. The damage to the plaintiffs' backyards related back to the defendant's allegedly negligent construction of the retaining wall and to the crack in the wall, but we held that the actual property damage to the backyard occurred when the wall collapsed. *Id.* at 458. We noted that when determining whether an event is an "occurrence," courts "must focus on the time of the

---

[1] I concur in the majority opinion's holding that we lack jurisdiction to consider Gonzalez's duty-to-indemnify claim on appeal.

14

'actual physical damage' to the property, and not the time of the 'negligent conduct' or the 'process that later results in' the damage." *Id.* at 458 (ellipsis omitted) (quoting *Don's Bldg.*, 267 S.W.3d at 24, 29–30); *see also Wilshire Ins.*, 581 F.3d at 224–25 (rejecting a similar argument that the actual physical damage occurred at the time the insured did the work rather than the first sign of deterioration).

Consistent with our precedent in *VRV Development* and *Wilshire*, I would hold that the actual physical damage to Hamilton's house occurred when the fire broke out, not when the alleged negligent hammering happened. The majority opinion, however, focuses on the time of the negligent conduct. It holds that "the damage from the 2016 fire 'shall be deemed' to have occurred in 2013" for three reasons: (1) the Petition stated "that the 2016 fire 'relates back to [the] construction and/or installation of siding' in 2013," (2) the policy defined "property damage" to include "all resulting loss of use of that property," so damage to the wire includes damage to the entire house, and (3) the underlying plaintiffs' claim of damages "alleg[ed] that the electrical wires were damaged in 2013." I disagree with all three points.

First, the Petition's factual background begins, "The injuries and *damages suffered* by Plaintiffs and made the basis of this action *arose out of an occurrence on or about December 1, 2016*" (emphasis added). The majority opinion overlooks this first part of the factual allegations and concludes that the allegedly negligent hammering was the damage, which was later discovered when the fire broke out. Thus, contrary to the majority opinion's determination, the underlying plaintiffs alleged facts that made a claim for property damage incurred by the fire.

Second, *VRV Development* dealt with the same definition of "property damage," *see* 630 F.3d at 454–55, a definition that is not as broad as the majority opinion contends. As the majority opinion holds, Gonzalez's alleged

15

negligence caused physical injury to the electrical wiring. Thus, "all resulting loss of use of that property" is limited to the electrical wires and does not extend to the entire house. *See That*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) (defining "that" as a "demonstrative pronoun" denoting the thing "that has just been mentioned" or "pointed out"); *see also VRV Dev.*, 630 F.3d at 457–58 (concluding that "property damage" to the retaining walls did not extend to damage to the plaintiffs' backyards).

Third and last, the majority opinion incorrectly interprets the Petition's damages section. The majority opinion contends that the underlying plaintiffs' allegation of "'actual damages to property contained within the property in question,' such as the electrical wire," plainly entails that electrical-wire damage occurred in 2013. The Petition states that the "damages . . . arose out of [the fire]" and that the fire caused damage to Hamilton's entire house, which includes the electrical wires. Thus, the factual allegations within the Petition are that "the time of the 'actual physical damage'" to Hamilton's property was when the fire broke out. *See VRV Dev.*, 630 F.3d at 458 (quoting *Don's Bldg.*, 267 S.W.3d at 24). Accordingly, Mid-Continent has no duty to defend Gonzalez in the Underlying Litigation because the fire caused the property damage and occurred after the policy period expired. Thus, I would reverse the district court's judgment on that issue and remand the case for further proceedings. From the majority opinion's failure to do so, I respectfully dissent.