# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2022

Lyle W. Cayce
Clerk

No. 19-51012

Bitco General Insurance Corporation, *formerly known as* Bituminous Casualty Corporation,

*Plaintiff—Appellee*,

*versus*

Monroe Guaranty Insurance Company, A Member of the FCCI Insurance Group,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-325

Before Higginbotham, Jones, and Higginson, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

Monroe Guaranty Insurance Company appeals a summary judgment ruling holding that it owed a duty to defend a commercial driller, which it insured along with BITCO General Insurance Corporation, from a suit filed in Texas state court. Monroe maintains that it had no duty to defend the driller because the damage either occurred outside its policy period or was excluded under the policy's terms. Having certified two questions to the Texas Supreme Court related to an insurance company's duty to defend, and with the benefit of its thoughtful response, we affirm.

No. 19-51012

## I.

BITCO and Monroe issued commercial general liability insurance policies to 5D Drilling & Pump Service Inc. BITCO issued a policy to 5D in effect from October 6, 2013 to October 6, 2014.[1] Monroe issued a policy to 5D in effect from October 6, 2015 to October 6, 2016. Monroe's policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." To be covered by the policy, the property damage must have "occur[ed] during the policy period." The Monroe policy carved out certain forms of property damage from its coverage. Relevant here are two "business loss" exclusions for "property damage" to:

> (5) That particular part of real property on which [the named insured] or any contractors or subcontractors working directly or indirectly on [the named insured's] behalf are performing operations, if the "property damage" arises out of those operations; or

> (6) That particular part of any property that must be restored, repaired or replaced because "[the named insured's] work" was incorrectly performed on it.

The parties' coverage dispute arose from 5D's drilling operations on a farm in Frio County, Texas. In the summer of 2014, David Jones hired 5D to drill a 3,600-foot-deep commercial irrigation well through the Edwards Aquifer, which runs beneath his farm. 5D allegedly failed to drill the well properly, and in June 2016, Jones sued 5D for breach of contract and negligence. For purposes of this appeal, Jones's Third Amended Petition is the operative pleading.

---

[1] The specifics of the BITCO policy are not at issue here.

No. 19-51012

5D provided notice of Jones's lawsuit to BITCO and Monroe, asserting that both insurers had a duty to defend 5D against Jones's claims. Under Texas law, a duty to defend arises when the allegations in the complaint state a cause of action within the terms of the policy.[2] BITCO agreed to defend 5D after receiving the Third Amended Petition. Monroe, however, refused to defend 5D, citing the two business risk exclusions in its policy and asserting that the alleged property damage occurred outside the policy period. The underlying Jones lawsuit against 5D has since settled. This case concerns only whether Monroe's policy gave rise to a duty to defend 5D in the underlying lawsuit.[3]

When Monroe refused to defend 5D, BITCO filed this case, seeking a declaratory judgment that Monroe also owed a duty to defend 5D in the Jones lawsuit and seeking to recover for Monroe's share of the defense of 5D. Both BITCO and Monroe moved for summary judgment. The magistrate judge issued a report and recommendation granting summary judgment to BITCO. She concluded that Monroe had a duty to defend 5D "[b]ecause the Third Amended Petition alleges 'property damage' caused by an 'occurrence' that could have occurred during the policy period, and because the business-risk exclusions cited by Monroe bar coverage for some, but not all, of the alleged 'property damage.'"[4] The district court adopted the magistrate's report and recommendation. Monroe timely appealed.

---

[2] *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

[3] It is undisputed that Bitco owed 5D a duty to defend in the underlying lawsuit.

[4] *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, No. SA18CV00325FBESC, 2019 WL 3459248, at *3 (W.D. Tex. July 31, 2019), *report and recommendation adopted*, No. SA-18-CA-325-FB, 2019 WL 11838850 (W.D. Tex. Sept. 27, 2019).

No. 19-51012

## II.

We review a district court's grant of summary judgment *de novo*.[5] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."[7]

## III.

The parties agree that Texas law governs this diversity case. Liability insurance policies impose two obligations on an insurer: a "duty to defend" and a "duty to indemnify."[8] These obligations are "distinct and separate duties."[9] The duty to defend—the duty at issue—is an insurer's obligation to provide a legal defense in "any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy, even if groundless, false or fraudulent."[10] It is triggered at the outset of the policyholder's underlying litigation.[11] The duty to indemnify is the insurer's obligation to pay "all covered claims and judgments against an insured," and it arises only after the policyholder's underlying liability has been

---

[5] *Ratliff v. Aransas County, Texas*, 948 F.3d 281, 287 (5th Cir. 2020).

[6] Fed. R. Civ. P. 56(a).

[7] *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).

[8] *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

[9] *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997).

[10] *D.R. Horton-Texas*, 300 S.W.3d at 743 (quoting 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 200:3 (3d ed. 2009)).

[11] *Id.* at 743–44 & n.2.

No. 19-51012

established.[12] "The duty to defend is broader than the duty to indemnify" and may be triggered where an insurer has no duty to indemnify.[13]

Under Texas law, courts determine whether an insurer's duty to defend has been triggered by using the "eight corners" or "complaint allegation" rule, meaning that "only two documents are ordinarily relevant to the determination of the duty to defend."[14] This rule confines the court's consideration to the underlying pleadings "without regard to the truth or falsity" of their allegations and to the relevant insurance policy.[15]

The party seeking coverage has the initial burden of establishing that the underlying claims potentially state a cause of action covered by the policy.[16] If a complaint alleges at least one cause of action that is "potentially" within the policy's coverage, the insurer must defend the entire lawsuit. If there is doubt as to whether the complaint states a covered cause of action, the court resolves the doubt in favor of coverage.[17] When pleadings in the underlying lawsuit have been amended, the court analyzes the duty to defend by examining the "latest, and only the latest, amended pleadings."[18]

---

[12] *Id.*

[13] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

[14] *GuideOne*, 197 S.W.3d at 308.

[15] *Id.* ("Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage.").

[16] *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

[17] *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965).

[18] *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (applying Texas law).

No. 19-51012

## A.

The parties dispute whether any of the "property damage" alleged could have occurred during Monroe's policy period, between October 6, 2015 and October 6, 2016. BITCO contends that the Jones pleading permits an inference that some of the alleged damage occurred within Monroe's policy period. The pleading alleged that in "the summer of 2014, Plaintiff contracted with Defendants . . . to drill a commercial irrigation well, for Plaintiffs' business," but it was silent as to when 5D lodged its drill bit in the bore; the detritus "slough[ed] off" and filled up the well; and 5D's negligence impaired the aquifer's flow. Given the dearth of specific dates in the pleadings and the "liberal interpretation" we are bound to give those pleadings, Jones alleged that some damage occurred within Monroe's policy period.[19] As the magistrate found, any damage must have occurred after "the summer of 2014," when Jones hired 5D to drill a well on his farm, but before June 30, 2016, when Jones filed suit against 5D—a period that covers approximately eight of the twelve months during which Monroe's policy was in force.[20]

In response, accepting that "it is unclear whether any Aquifer Damage or Well Bore Damage occurred within [its] Policy Period" based on the Jones allegations, Monroe points to extrinsic evidence, specifically, a stipulation between the parties stating that 5D's drill bit became stuck in the well "in or around November 2014." Monroe argues that because the stipulation confirms that the drill bit became stuck during drilling in or around November 2014, almost one year before the inception of the its policy, it

---

[19] *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

[20] *Bitco Gen. Ins. Corp.*, 2019 WL 3459248, at *5.

would entirely preclude the alleged property damage from coverage. Typically, the eight-corners rule prevents this court from considering any extrinsic evidence. However, in *Northfield* this Court held that Texas law recognized a limited exception to the eight-corners rule "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."[21]

As the question of extrinsic evidence is paramount in this case, we certified two questions to the Texas Supreme Court. We asked, first, whether the *Northfield* exception to the "eight-corners" rule is permissible under Texas law, and second, whether the date of an occurrence is the type of extrinsic evidence that we may consider. The Texas Supreme Court held:

> [T]he eight-corners rule remains the initial inquiry to be used to determine whether a duty to defend exists. But if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.[22]

---

[21] *Northfield*, 363 F.3d at 528 (emphasis in the original).

[22] *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, No. 21-0232, 2022 WL 413940, at *7 (Tex. Feb. 11, 2022).

Thus, the Texas Supreme Court confirms that we may depart from the strict limitations of the eight-corners rule, when the above requirements are met. The extrinsic evidence at issue here is a stipulation that proves that the drill bit got stuck in or around November 2014. Monroe argued that this stipulation relieves it of a duty to defend, because it proves that the property damage occurred in November 2014, months before its policy took effect. However, the Texas Supreme Court concluded we could not consider this evidence because although "evidence of the date of an occurrence may be considered if it meets the other requirements described above," the stipulation "does not pass the test."[23] The stipulation would impermissibly overlap with determining the merits of liability because "[a] dispute as to *when* property damage occurs also implicates *whether* property damage occurred on that date, forcing the insured to confess damages at a particular date to invoke coverage, when its position may very well be that no damage was sustained at all."[24] Monroe acknowledges that the Texas Supreme Court's decision forecloses its argument that it had no duty to defend based on when the damage occurred. Thus, the Jones pleading alleges damage potentially within the Monroe policy period, sufficient to trigger the duty to defend.

## B.

Monroe contends that even if the Jones pleading alleges damage potentially within its policy period, it still has no duty to defend because all the damage 5D allegedly caused falls within two policy exclusions. Monroe has the burden to establish that the coverage exclusions apply to all of the

---

[23] *Id.*

[24]*Id.* (emphasis in the original).

damage Jones alleged.[25] Generally "[w]hen the language of an insurance policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured."[26] When policy exclusions are at issue, "an even more stringent construction is required," and we "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."[27]

Monroe's policy excludes from coverage damage to "that particular part of [] property" on which 5D was "performing operations" or which "must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Monroe's policy defines "your work" to mean "[w]ork or operations performed by [the named insured] or on [the named insured's] behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." So, the applicability of either exception depends on whether the Jones pleading alleges damage to something other than "that particular part of [] property" on which 5D performed its work or operations. If so, then the exclusions do not bar all coverage and Monroe has a duty to defend.

Here, Monroe cannot carry its burden because it cannot show that either exception unambiguously applies to all the damage alleged, nor can it show that it is unreasonable to construe the exclusionary phrase "that particular part" as applying only to the portion of the property actually

---

[25] *Gilbert Texas Const.*, 327 548 S.W.3d at 124.

[26] *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 557 (5th Cir. 2020) (internal quotations removed).

[27] *Id.* at 561.

pierced by the well.[28] Monroe contends—and BITCO does not seriously dispute—that any damage 5D caused to the well itself is excluded from coverage because the well clearly constitutes that particular part of the Jones property on which 5D performed operations. The difficulty for Monroe lies in the alleged damage to the Edwards Aquifer. The pleading alleges that 5D's negligence "damag[ed] the aquifer" and "damag[ed] the free flow of water in the aquifer." Monroe contends that the aquifer damage is excluded under the policy because the aquifer itself was "[t]he real property on which 5D was working." To support this view, Monroe notes that 5D contracted with Jones to drill a "well through the Edwards Aquifer to approximately 3,600 feet."

We cannot accept Monroe's argument because it invites us to construe the policy exclusions for "that particular part of [] property" as covering the whole Edwards Aquifer, or at least the whole of it running beneath the Jones farm. At a minimum, such an interpretation strains the meaning of the words "particular part." Another panel of this court, addressing identically-worded exclusions, noted that "[t]he plain and ordinary meaning of 'particular' is '[r]elating to a part or portion of anything; separate; sole; single; individual; specific; as, the *particular* stars of a constellation.' 'Part,' in turn, means 'something less than a whole.'"[29] Monroe effectively asks us to read its policy exclusions broadly and against the insured—the precise opposite of what Texas law requires us to do—as Monroe asks us to exclude damage done anywhere within the aquifer from

---

[28] *See id.* at 560 (We are "obliged to construe the pleadings liberally and resolve all doubts regarding the duty to defend in favor of the duty. Where the pleading does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case . . . within the coverage of the policy.") (internal quotations and citation omitted).

[29] *Id.* at 560–61 (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1781, 1783 (2d ed. 1934; 1950)).

No. 19-51012

coverage, even though 5D would have pierced the aquifer only at one specific point.[30] We decline to do so.

The overbreadth of Monroe's interpretation is underscored by the reality that the Edwards Aquifer is an expansive subterranean system, extending under ten counties; the "total surface area overlying the Aquifer is approximately 3,600 square miles."[31] The aquifer's sheer size belies Monroe's contention that it is subsumed by the phrase "that particular part."[32] We find that Monroe's duty to defend 5D was triggered by the allegations in the Jones lawsuit.

\* \* \* \*

We AFFIRM the district court's order granting summary judgment to BITCO on its claim for declaratory judgment and denying summary judgment to Monroe.

---

[30] *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008) ("Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor.").

[31] Edwards Aquifer Authority, *About the Edwards Aquifer*, https://www.edwardsaquifer.org/science-maps/about-the-edwards-aquifer/.

[32] The variety of constituent features within the aquifer makes it dissimilar from the steel storage tank damaged in *Southwest Tank & Treater Mfg. Co. v. Mid-Continent Casualty*, where the defective work rendered the entire tank unusable, which is not so for the aquifer here. 243 F. Supp. 2d 597 (E.D. Tex. 2003). Similarly, the reasoning in *Kinsale Ins. Co. v. ETOPSI Oil & Gas LLC* does not apply. 477 F. Supp. 3d 555, 557 (E.D. Tex. 2020), *aff'd sub nom. Kinsale Ins. Co. v. McBride Operating L.L.C.*, 855 F. App'x 234 (5th Cir. 2021). In *Kinsale*, the damage alleged was to the property on which the insured was working, here the damage goes beyond the well 5D worked on, to the Edwards Aquifer itself.